P. C. TOEWS, APPELLEE, v. WILLIAM SCHLITT, APPELLANT.

FILED MARCH 23, 1934. No. 28895.

*J. E. Willits,* for appellant.

*W. M. Whelan,* contra.

Heard before GOOD, EBERLY, DAY and PAINE, JJ., and LANDIS, District Judge.

PAINE, J.

This is an action for the foreclosure of a mechanic's

lien. There is no question of law involved, and not a single citation of authority is made in either brief. The questions involved must be determined entirely from the evidence, to ascertain the proper amount of the recovery.

A house belonging to appellant, William Schlitt, located at 218 East A street, in Hastings, Nebraska, had the roof blown off by a tornado on May 9, 1930. The Pauley Lumber Company made an offer to repair the house for $1,222, and the owner of the property in his answer says that when he told this to contractor P. C. Toews, appellee, he agreed to do the work necessary to repair and improve the house, and make it in the same condition it was before the tornado, for $1,000. Appellee denies this, and says that he agreed to do it for the same price as Pauley Lumber Company, to wit, $1,222. The owner of the house says that he paid appellee $400 in cash and paid for material used by him $550.87, making a total payment of $950.87, leaving a balance on the agreed price of $49.13, and charges that many things that should have been done were not done at all.

The owner testifies that the house was built in 1918, and that the tornado knocked the roof over in front, knocked it down in the center, blew the window-lights in, and the plaster down, and moved the east wall in. Such a disaster would doubtless involve hidden structural defects, and make it next to impossible to improve the house from the condition it was in before the tornado, as alleged.

It is very rare that one finds a case where the principals differ so absolutely as they do in this case as to nearly every item under the contract, including the total price. The principal differences relate to whether the contractor did not entirely abandon the job, and whether certain painting was not entirely left out by the contractor. There is also a question whether even now the house is not bent in the middle as a result of the tornado, and that this should have been straightened out by the contractor as a part of his contract.

The appellee insists that the trial judge patiently

listened to all the evidence, and properly considered every item that was proved in the evidence, and that the final judgment is right.

It appears that appellee Toews first came to the house and finally estimated that $1,400 was the amount due from the insurance company carrying the tornado insurance; that he then came down nearly every evening for a week, and the matter was talked over for hours at a time, but no contract was drawn, and the court is left to evolve what the contract probably was from all this evidence, including a study of the 27 exhibits. Each party was honestly impressed with certain details which the other party entirely failed to remember, as is usual in such cases, and proof is lacking as to the final and definite meeting of minds, not alone on the total contract price, but on each detail. It would have saved endless dispute and hard feelings if this contract had been reduced to writing in even a crude fashion.

Judge Blackledge, who tried the case October 11, 1932, gave it most careful consideration until he rendered judgment on January 27, 1933, finding from the evidence that a total amount of $950.87 had been paid, but that there was a further credit which must be allowed on account of unfinished work, which should have been done under the contract, in the sum of $38.13. He also found that the contract price was for $1,222, and not $1,000, and that there was a balance of $233 still due, with interest, and directed that if said sum was not paid the property should be sold according to law.

This court is unable to find any error in the disposition made of the case by the trial court, and therefore the judgment is

AFFIRMED.